UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Criminal Action No. 09-34-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| BEVERLY EILEEN BANKS, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

A grand jury indicted the defendant, Beverly E. Banks, on charges related to Social Security fraud. R. 33. Banks moved to suppress written and oral statements made during an interview with Special Agents of the Social Security Administration Office of the Inspector General ("SSA") on October 23, 2008. *See* R. 20 and R. 40. The United States opposed suppression of those statements. *See* R. 28 and R. 46. On January 15, 2010, United States Magistrate Judge Edward Atkins held a suppression hearing. *See* R. 55 (hearing transcript). After the hearing, Banks filed a second motion to suppress, R. 54, and the government responded, R. 57. On February 10, 2010, Judge Atkins recommended that the Court deny the defendant's motions to suppress. R. 60.

Banks filed an objection to the recommendation, R. 68, to which the United States responded, R. 69. In that objection, she contends that the evidence from her interview with the SSA agents should be suppressed because although she invoked her right to counsel, the interview continued without her counsel present. *See* R. 68. She is wrong. She had no right to

counsel during that interview. Thus, the Court denies Banks's motions to suppress her statements and adopts Judge Atkins's recommendation.

## BACKGROUND

The parties agree on most of the material facts related to Banks's objection; one fact is disputed and noted below. On October 23, 2008, Banks arrived at the SSA office in response to a letter she received from the SSA. R. 55 at 7. Her number was called and she went into a room with two SSA agents, Adam Collins and Philip Krieger, and a SSA claims representative, David Napier. *Id.* at 9, 18. At the start of the interview, Banks and the SSA agents signed the following form:

### ADVISEMENT OF RIGHTS
### (Non-Custodial)

> Before we ask you any questions you must understand your rights. You have the right to remain silent and make no statement at all. Any statement you do make may be used as evidence against you in criminal proceedings. You are not in custody. You are free to leave or terminate this interview at any time.

### WAIVER OF RIGHTS

> I have read this statement of rights, and I understand what my rights are. I have been advised as the [sic] general nature of the inquiry being made. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. I am willing to make a statement and answer questions voluntarily.

R. 28, Ex. 1. Banks testified that she had the following exchange with the agents early in the interview:

> When I first went in, of course, I seen [Agent Collins] sitting there and I kind of got feeling a little uncomfortable and I told him, I said, "Well, maybe I might need a lawyer," you know, and they said, "Well, you haven't done anything wrong.

2

> Why would you need a lawyer? You don't need a lawyer." And I said, "Well, I feel uncomfortable," and if I needed a lawyer. And they just kept saying, "You didn't do anything wrong. You don't need a lawyer."

R. 55 at 10. Agent Collins's handwritten notes from the interview and testimony at the hearing are mostly consistent with Banks's testimony. He wrote, "[Banks] stated to the effect 'Maybe, I should get a lawyer but then continued the interview.'" R. 54, Ex. B at 2. And, at the suppression hearing, Agent Collins acknowledged that Banks said she might need a lawyer. R. 55 at 70. However, he did not recall telling Banks she did not need an attorney. *Id.* at 70. Rather, if someone asked if she needed an attorney, Agent Collins said he would tell her that she needed to make that decision. *Id.* at 70, 72 ("I am there as a finder of fact. Whether or not someone needs counsel, that's not my role there. My role is to just find facts. I don't know if the person needs an attorney or not. That's my response. If that comes up, that's what's in the back of my mind. I don't know if they need an attorney. That's up to them."). After this exchange, the interview proceeded, and Banks said and wrote statements that she now believes should be suppressed.

## DISCUSSION

The parties agree that Banks said something to the effect of, "Well, maybe I might need a lawyer." R. 55 at 10, 70; *see also* R. 54, Ex. B at 2. Banks's objection solely focuses on "whether a law enforcement officer has the right to ignore the invocation [of] a right granted a defendant pursuant to the United States Constitution." R. 68 at 3. The Court considers this objection to Judge Atkins's recommendation de novo. Fed. R. Crim. Proc. 59(b)(3). Because Banks had no right to counsel during her interview with the SSA agents, her objection is

overruled.

Banks's objection appears to focus on some sort of general right to counsel. She also points to constitutional protections that are inapplicable to her interview with the SSA agents. Individuals have a right to counsel in two specific situations: (1) when adversary criminal proceedings are initiated and (2) when they are taken into custody for interrogation. Banks was in neither of these situations.

## I. The Sixth Amendment

"The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings, and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Davis v. United States*, 512 U.S. 452, 456-57 (1994) (citation omitted). It is undisputed that when Banks allegedly invoked her right to counsel, no adversary criminal proceeding had begun. Thus, she could not have invoked a Sixth Amendment right to counsel at her interview.

## II. *Miranda*

The next question is whether she was in custody (and could have invoked a right to counsel on that basis). She was not in custody. Under *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966), the Supreme Court has required that certain rights be provided to an accused who is in custody. Among those is the right to counsel. If someone invokes the right to counsel while in custody, "he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis*, 512 U.S. at 458 (citing *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981)). The Sixth Circuit has provided the following test to determine

whether an individual is in custody:

> In drawing the line between a non-custodial encounter between a citizen and the police (where *Miranda* does not apply) and a custodial encounter (where it does), courts consider all of the circumstances surrounding the encounter, with the ultimate inquiry turning on whether a formal arrest occurred or whether there was a restraint on freedom of movement of the degree associated with a formal arrest. To answer this question, courts focus on the objective circumstances of the interrogation, to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.

*United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (quoting *Stansbury v. California*, 511 U.S. 318, 322-25 (1994) (internal citations and quotation marks omitted)). In *Panak*, the defendant gave incriminating statements to Drug Enforcement Administration investigators while being interviewed at her home. *Id.* at 464. The motion to suppress was denied because the interrogation was found to be non-custodial. *Id.* at 465. The Sixth Circuit noted the following facts in coming to that conclusion: the defendant was interviewed in her home; the interview lasted between forty-five minutes and an hour; she was not handcuffed or physically restrained; the investigators did not brandish firearms or handcuffs; and they never told her that she was in trouble or threatened her with arrest. *Id.* at 465-67. However, the investigators did say that her boss was going to jail, and they failed to say that she could choose to not answer the questions or end the interview at will. *Id.* at 467. Still, the Court found the interrogation to be non-custodial.

In his recommendation, Judge Atkins focuses on the factors that the *Panak* court applied and correctly found that Banks was not in custody so she had no rights under *Miranda*. R. 60 at 5-10. The critical fact supporting that finding is the form that Banks signed within the first ten

5

minutes of the interview. The form had the heading "Non-custodial" and said: "You have the right to remain silent and make no statement at all. Any statement you do make may be used as evidence against you in criminal proceedings. You are not in custody. You are free to leave or terminate this interview at any time." R. 28, Ex. 1. Unlike in *Panak*, the agents here did notify Banks at the outset that she was free to leave. As Judge Atkins makes clear, whether an agent tells the defendant she does not need to answer any questions and can terminate the interview at will is "a particularly important factor in showing that no custody occurred." R. 60 at 8-9 (quoting *Panak*, 552 F.3d at 467-68)). Although not necessary, that factor is "frequently [a] sufficient condition" to finding that the agents were questioning an individual in a non-custodial setting. *Panak*, 552 F.3d at 466-68 ("[T]he Eighth Circuit observed that it was unable to find a single precedent from the Supreme Court or the courts of appeals—save for a 1982 Ninth Circuit decision 'decided under an outmoded standard of review'—that 'holds that a person was in custody after being clearly advised of his freedom to leave or terminate questioning.'" (quoting *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004))). That form should have made clear to Banks that she did not need to answer any questions and was free to leave.

Judge Atkins rightly demonstrates that nearly all of the objective circumstances of the interview support the conclusion that Banks was not in custody.[1] R. 60 at 7-9. As in *Panak*, Banks was not handcuffed nor did the agents show their firearms. *Id.* She went to the SSA

---

[1] Whether Banks felt that she could leave has no bearing on the question of whether or not she was in custody since the test is an objective one. *Coomer v. Yukins*, 533 F.3d 477, 487 (6th Cir. 2008).

office alone without an escort. *Id.* She waited in a public lobby unrestrained and then after her number was called, she walked into an unlocked room adjacent to that lobby. *Id.* She sat closest to the unlocked door to the lobby. *Id.*; *see also United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (finding that the interview was not custodial, in part, because both interview rooms used were unlocked and the defendant sat in the chair closest to the door). Though there were no windows in the room, the close proximity to the public cuts in favor of finding that Banks was not in custody. R. 60 at 7 (citing *Berkemer v. McCarthy*, 468 U.S. 420, 438 (1984)). The length of the interview, Banks said, was two to three hours. R. 55 at 12, 35, and 40. The length does not suggest that the interview was custodial. *See Panak*, 552 F.3d at 467 (noting that an interview up to an hour and a half long can be non-custodial). During the interview, there were no breaks taken and no one left the room. R. 55 at 12. But, that is the only objective circumstance suggesting a custodial interrogation. That fact alone does not indicate the interview was custodial, since all the other objective circumstances of the interview support finding that she was not in custody.

The next factor to consider is the manner of the questioning. While any encounter with law enforcement officials may have "coercive aspects to it, simply by virtue of the fact that the [official] is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime," investigators "are not required to administer *Miranda* warnings to everyone whom they question," and a "noncustodial setting is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a coercive

7

atmosphere." *Panak*, 552 F.3d at 471 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). Still, an agent's statements to a defendant can create a "coercive context tantamount to custody." *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998). However, "[those] statements must somehow relate to the suspect's freedom of action." *Id.* at 952. As demonstrated below, Agent Collins's statements to Banks—even when taken together—did not relate to her freedom to leave nor did they indicate that she had to "stay put." *See id.* at 951 (finding an interview to be non-custodial where the defendant was never told that "he was under arrest or even threatened with arrest or told to 'stay put.'"). He also never threatened her with an arrest. Therefore, his manner of questioning does not favor finding that the interview was custodial.

Agent Collins testified that he does not bully people in interviews and instead tries to build a rapport with them. R. 55 at 46-47. On the other hand, Banks testified that Agent Collins's statements caused her to cry and feel like she could not leave the interview. *Id.* at 11-13. Banks said Agent Collins accused her being of a liar, since they had other evidence, including eyewitnesses, proving that she was living with her child's father, Tim Lawson. *Id.* at 11. This statement suggests that the SSA agents knew Banks committed fraud. But simply stating that a person may be prosecuted for a crime or is a suspect does not imply that she cannot leave the interview—especially when beforehand she signs a form stating otherwise. *See Salvo*, 133 F.3d at 953 (finding that an interview was not coercive even though the agent showed the defendant evidence of his crime and told him that "the Assistant U.S. Attorney would be prosecuting the case" and that "things were such that maybe he should get a lawyer to have that person talk with the Assistant U.S. Attorney.").

She also testified that Agent Collins told her that she had to sign "the paper" to keep her social security benefits. R. 55 at 11. Presumably, this was the written statement (that she seeks to have suppressed) where she confessed that she lived with Lawson and that he paid her bills. *Id.* at 13. She claimed that after she signed the statement, they told her that she had already lost her social security benefits before she even came to the office. *Id. at* 11, 13. The threat may have made Banks nervous that she would lose her benefits, but it did not relate to her ability to leave the room.

She also appears to claim that she had to sign the statement before she was permitted to leave the room. *Id.* at 13 ("[Q.] What was the final thing you did, that you were allowed to leave the room? A. I had to sign a confession saying that Tim did live with me and that Tim did pay my bills.") But, Banks did *not* testify that Agent Collins said she had to sign the confession to leave the room. Such evidence may have altered the analysis here. Her testimony, however, only states that she "had to sign a confession." *Id.* Additional testimony could have clarified whether that feeling of restraint came from a statement that Agent Collins made as opposed to her subjective thought. "[T]he Supreme Court has repeatedly instructed courts to dismiss a suspect's subjective thoughts." *Coomer*, 533 F.3d at 487 (citing *Stansbury*, 511 U.S. at 323). Thus, Banks needed to connect her subjective thought—that she needed to sign the confession in order to leave the room—to the statements of the agent. She did not. The fact that Banks felt she had to sign the confession to leave the room has no bearing on the analysis here without more (which she failed to provide). For example, had Agent Collins threatened to arrest Banks if she did not sign the form, then the interview may have been custodial. *See Salvo*, 133 F.3d at 951. There

9

is no evidence that he did.

Banks also testified that Agent Collins said to her during the interview that she did not need a lawyer. R. 55 at 10 ("You didn't do anything wrong. You don't need a lawyer.") Agent Collins did not recall making that statement. *Id.* at 70. Whether he did or did not make that statement is a moot point. The statement would not cause a reasonable person to believe she could not leave the interview or feel restrained.

Banks testified that Agent Collins used profanity and that the interviewers accused Lawson of being, among other things, a "deadbeat dad" and an alcoholic. *Id*. at 11. Those statements may have made Banks uncomfortable, but they hardly indicated that she could not leave the room. Nor does the fact that an officer may be tough–or even rude or unprofessional– in their questioning automatically mean someone is in custody.[2]

Even if the Court for the purposes of this opinion presumes that Banks's account of the agent's statements is accurate, the statements—taken together or considered individually—did not affect her freedom to leave. Ultimately, there is no evidence that the agent's statements implied that Banks could not leave the room or threatened her with an arrest. Therefore, the manner of the questioning was non-custodial.

---

[2]While there could be a case where the tone, manner, and method of questioning made it such that an objective person would not feel free to leave, that is not this case. *See Panak*, 552 F.3d at 468 ("But to say that [a warning that the defendant need not answer the questions] likely would have guaranteed the noncustodial nature of this interview is not to say that its absence transformed the meeting into an arrest-like situation. In a close case, sure enough, the existence of such advice might affect the outcome. Had this interview occurred in a less congenial location, *had the officers by word or action asserted their arrest authority* or had they threatened Panak by emphasizing their knowledge of her guilt, the absence of such advice might have made all the difference.") (emphasis added).

Banks's interview was non-custodial in nature. She signed a form telling her that she was not in custody and that she was "free to leave or terminate [the] interview at any time." R. 28, Ex. 1. In addition, she was close to the public in an office setting, and sat closest to an unlocked door with no handcuffs or exposed firearms in the room. None of the statements that Agent Collins made indicated that Banks could not leave. Those facts, including the others mentioned earlier, support the finding that she was not in a custodial interrogation. As such, *Miranda* warnings were not required, and Banks had no right to counsel. If she felt uncomfortable, she could have simply left. This part of Judge Atkins's opinion, R. 60 at 5-10, is adopted to the extent it is consistent with the foregoing analysis.

The Court need not reach Judge Atkins's analysis on whether her request for counsel was unambiguous, R. 60 at 10-11, because Banks had no right to counsel to invoke at the SSA office.

In her objection, she also appears to be arguing that the SSA agent violated her right to remain silent under *Miranda*. R. 68 at 2. As discussed, she had no *Miranda* right to remain silent because she was not in custody.

For these reasons, the defendant's motions to suppress, R. 20, R. 40, and R. 54, are **DENIED**, and Judge Atkins's recommendation, R. 60, is **ADOPTED**.

This the 9th day of April, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge