UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Criminal Action No. 09-34-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| BEVERLY EILEEN BANKS, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Seeking a new trial, Beverly Banks argues that recently disclosed Medicaid records revealing psychological problems call into question investigator testimony about a meeting at which she confessed to Social Security fraud. But the defendant has not shown how those records actually contradict the investigator's testimony. And the information in the records—even assuming it was "new" evidence—was only a part of the government's overall case. The motion for a new trial is denied.

**BACKGROUND**

On September 6, 2007, the defendant told the Social Security Administration that she did not live with the father of her child, Tim Lawson—a representation that paved the way for larger disability payments. Then, in an October 23, 2008, meeting with the SSA, she admitted that she lied. The Court previously denied a motion to suppress that admission—an admission made after the defendant unsuccessfully requested an attorney—because the meeting was not custodial. R. 75. After hearing all of the evidence, including her confession, the jury convicted Ms. Banks on

two counts of social security fraud. The defendant now seeks a new trial.

In preparation for sentencing, the government produced a spreadsheet of the defendant's Medicaid expenditures during the time she received disability benefits. R. 106, Attach. 1 at 1. According to the defendant, these records indicate that she suffered from "a number of psychological issues," including severe depression and psychosis, in September and October 2008—the time of her confession. R. 105, Attach. 1 at 2. This new evidence, the defendant insists, entitles her to a second trial.

## DISCUSSION

Motions for a new trial based on newly discovered evidence are "disfavored." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000). That disfavor looms large here, because it is unclear exactly why the defendant believes she is entitled to a new trial. Does she contend this is a run-of-the-mill Rule 33 case? A Rule 33 case, modified by *Giglio*? A Rule 33 case, modified by *Brady*? Or does she contend this is a Rule 16 case?

When new evidence is discovered, Rule 33 allows a court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). According to the Sixth Circuit, justice usually only so requires if the evidence (1) is discovered after trial, (2) could not have been discovered with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal if the case is retried. *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982). Here, the defendant apparently acknowledges that a run-of-the-mill application of Rule 33 would not entitled her to a new trial. She says virtually nothing, for instance, to suggest the Medicaid records would "likely produce an acquittal"—declining to

2

address any of the other evidence of her guilt presented at trial.

Instead, the defendant appears to seek a new trial on the theory that this evidence was not just "new" evidence, but new *Giglio* evidence—evidence that a government witness gave false testimony. The Medicaid records expose false testimony by a government witness in this case, she contends, and so she need only show a "reasonable likelihood that the false testimony would have affected the judgment of the jury" under a *Giglio*-based exception to Rule 33 described in *United States v. Stoddard*, 875 F.2d 1233, 1237 (6th Cir. 1989) (citing *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972))). R. 105, Attach. 1 at 4.

The problem is that the defendant has not shown that this is really *Giglio* evidence. She has not identified any testimony exposed as false by the Medicaid records. She says simply that an agent present at the October 23 meeting testified in a later suppression hearing that he typically tries to determine whether a potential interviewee is impaired by discerning the kind of medication the interviewee is taking during the meeting. In her case, he "got a list of medications [the defendant] was on" at this particular meeting. *Id.* at 3-4. From there, the defendant takes a big leap: "Had [the Medicaid records] been revealed to the Defendant in advance of the suppression hearing and trial," she says, "the Court could have concluded that the agent's testimony at the suppression hearing was false." *Id.* at 4. But why? She offers nothing further to support this claim that the agent somehow lied about the October 23 meeting—other than the assertion that the agent surreptitiously chose to note the defendant's request for an attorney at the meeting only in his interview notes. R. 105, Attach. 1 at 3 n.1.

3

The implication seems to be that the agent meant to say he found no signs that the defendant was medicated or impaired, while he actually knew otherwise all along. His entire account of the October 23 meeting, the defendant argues, is therefore suspect. But this is simply incorrect. At the suppression hearing, the agent testified that he asked the defendant what medications she was taking and that she gave him a list. R. 55 at 60. He added that the defendant said she was bipolar. *Id.* The agent said the same things at trial, adding that he did not remember whether he examined the defendant's file before the interview. He hardly claimed to have believed the defendant was a model of mental health.[1]

The defendant characterizes this argument slightly differently in her reply. There, she says the real question is whether the agent was honest when he claimed that he "never would have conducted the interview with the Defendant" if "he had known the Defendant was medicated." R. 107 at 1. But in the very next sentence, she abandons any pretense that the Medicaid records themselves expose any dishonesty in this regard: "Yet if he was so concerned, then the question needs to be answered as to why he chose to wait until the end of his two hour interrogation of the Defendant before he asked her if she was on any medication." *Id.* In this view, it is the investigator's decision to wait until the end of the interview that exposed the "lie," not the Medicaid records.

---

[1] Without elaboration, the defendant also argues that the Medicaid records "would have allowed the jury to conclude that the testimony of at least one government witness who testified about the Defendant's psychological condition based on his review of the Defendant's Social Security record was also false." R. 105, Attach. 1 at 4. Presumably she is talking about the trial testimony of the same agent, who told the jury he did not recall whether he reviewed the defendant's file for information about her mental health before his interview. The existence of the Medicaid records does not make this a lie.

4

Perhaps the defendant alternatively seeks a new trial on the theory that this is not just "new" evidence, but new *Brady* evidence. But this argument also fails. To begin, it is not even clear that this evidence was "newly discovered" under the rubrics of either Rule 33 or *Brady*. Rule 33 is unavailable where the defendant could have secured the evidence through due diligence or where the purported evidence is "based on facts that were known to [the defendant] prior to trial." *United States v. Wade*, 93 F. App'x 789, 790 (6th Cir. 2004). Similarly, the *Brady* rule for overturning convictions where the government fails to disclose material evidence does not apply where the "defendant is [] aware of the essential facts that would allow him to take advantage of the exculpatory evidence at issue." *Hutchison v. Bell*, 303 F.3d 720, 747 (6th Cir. 2002) (quoting *Coleman v. Mitchell*, 268 F.3d 417, 438 (6th Cir. 2001)); *see also United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988). Here, the defendant clearly knew before trial that she suffered from mental illness at the time of the October 23 meeting. She raised her "bipolar disease" way back in the first iteration of her suppression motion, R. 20, Attach. 2 at 1 n.1, and at the suppression hearing, the investigating agent testified that the defendant told him she was bipolar on October 23. R. 55 at 60. Further, her counsel asked the investigator about the defendant's "mental issues" at trial. And the defendant makes no argument that she was unaware that Medicaid was paying for her mental health treatment. It is unclear what other "essential facts" would have been revealed with production of the Medicaid payment records.[2]

But even setting this aside, the defendant has offered nothing more than conclusory

---

[2] The parties dispute whether the government produced documents before trial which made reference to the Medicaid records. *See* R. 107 at 2.

assertions to explain how revelation of the Medicaid records supports a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"—the Rule 33 materiality standard that applies for new evidence that doubles as *Brady* evidence. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *United States v. Schledwitz*, Nos. 95-5309, 95-5409, 1995 WL 712755, at *4 (6th Cir. Dec. 4, 1995); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986).

She does not meaningfully explain, for instance, how such evidence would have changed the Court's decision not to suppress her confession—a decision it reached because the October 23 meeting was non-custodial. She says only that the "Court could have concluded that the agent's testimony at the suppression hearing was false." R. 105, Attach. 1 at 4. Yet she points to nothing in the Medicaid records that contradicts the investigating agent's testimony about the October 23 meeting, nor does she explain how that purportedly inaccurate testimony would have affected the Court's decision. Ultimately, looking beyond the argument the defendant has actually made, it is hard to see how this evidence could change the decision. The fact of the defendant's psychological problems is nothing new. At the suppression hearing, the defendant already testified that she was bipolar and took medication. R. 55 at 6, 16, 60-61. And the defendant has cited no authority for the proposition that her mental health problems automatically rendered the meeting custodial or otherwise coercive (or explained how it did so in this case). This, despite the fact that the Supreme Court has held that a defendant's mental illness alone does not automatically render his or her confession the product of coercion. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986).

Even if the Court had suppressed the confession—or even if the jury had seen the Medicaid records—it is still not reasonably probable that the outcome of the trial would have been different. The confession was hardly the only evidence showing that the defendant lied about not living with Tim Lawson. For example:

- Contrary to the defendant's statement that Tim Lawson lived with his mother rather than with the defendant, Tim Lawson's mother said that he did not live with her.

- The defendant's landlord—who lived nearby—testified that he rented the defendant's home to both her and Tim Lawson, that both she and Tim Lawson made rent payments, that he saw Tim Lawson at the residence almost every day, that they appeared to be living as a family, and that he evicted both in 2009.

- A post office employee testified that Tim Lawson applied for a post office box using the defendant's address.

- Two of the defendant's neighbors testified that she appeared to live with Tim Lawson.

- Bank records reflected that Tim Lawson and the defendant were joint recipients of a loan through Watts Mobile Homes.

- In a joint credit application with Tim Lawson, the defendant listed her marital status as "married."

- Tim Lawson made payments on the mortgage for the defendant's home.

- An employee of the local public school system testified that he had visited the

defendant's home and saw Tim Lawson there. The employee also testified that school records listed Tim Lawson as the guardian of the defendant's son.

The government's proof did not stop there. But it is clear from just these items that the defendant's confession was only one piece of the puzzle. It is not reasonably probable that, had the defendant won the suppression motion or had the parties introduced the Medicaid records at trial, the jury would have changed its mind about the truth of the defendant's claims about Tim Lawson. If anything, the Medicaid records were nothing more than mere impeachment evidence—not enough to require a new trial. *See United States v. Riggins*, Nos. 98-6138, 98-6139, 2000 WL 282464, at *2 (6th Cir. March 8, 2000) ("Newly discovered impeachment evidence does not warrant a new trial as a matter of law.").

Finally, the defendant might seek a new trial on the theory that the government violated Fed. R. Crim. P. 16(a)(1)(E) by not producing documents material to her defense. But, from the outset, it is unclear this is any different from a run-of-the-mill Rule 33 motion. Panels of the Sixth Circuit have reviewed new-trial requests for Rule 16 violations under the Rule 33 rubric. *See, e.g., United States v. Causey*, No. 97-1018, 1998 WL 381433, at *1 (6th Cir. June 24, 1998); *United States v. Roddy*, No. 91-3187, 1991 WL 203738, at *1 (6th Cir. Oct. 7, 1991). If this is the correct reading, the defendant's argument fails for the reasons stated above.

But even if Rule 16 is a stand-alone basis for granting a new trial, she loses. Rule 16 itself grants the Court discretion when remedying violations, *United States v. De La Rosa*, 196 F.3d 712, 715 (7th Cir. 1999), and the defendant has not shown any prejudice. *See United States v. Lee*, 573 F.3d 155, 164 (3d Cir. 2009) (holding that securing a new trial under Rule 16 requires

8

a showing of prejudice); *United States v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987) (same); *United States v. Pascual*, 606 F.2d 561, 565-66 (5th Cir. 1979) (same). As illustrated by the catalogue of inculpatory evidence above, she clearly has not shown a "likelihood that the verdict would have been different" had the government made this disclosure. *United States v. Renard*, 287 F. App'x 189, 191 (3d Cir. 2008). Nor has she explained how her "defense strategy may have been determined by the failure to comply[.]" *United States v. Padrone*, 406 F.2d 560, 561 (2d Cir. 1969). Indeed, it is hard to see how her strategy could have been any different with knowledge about the Medicaid records. She already knew of her own mental illness—a fact she revealed to the jury which the government never disputed. And she already attempted to impeach the investigator's account of the October 23 meeting. There was little else should could do.

## CONCLUSION

Accordingly, it is **ORDERED** that the motion for a new trial, R. 105, is **DENIED.**

This the 6th day of December, 2010.

Signed By:
*Amul R. Thapar* 
**United States District Judge**

9